***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** MOTION
Defendant's 14 March 2002 Motion to Amend its Form 44, filed on 14 March 2002 following the review hearing of the Full Commission, is hereby DENIED. Defendant has not provided the Commission with any reasonable basis upon which to waive Rule 701 of the Workers' Compensation Rules. It is noted that defendant was provided with an extension of time in which to file the Form 44, and still did not assign error to the findings of fact in question. Accordingly, the findings of fact by the Deputy Commissioner that plaintiff was exposed to asbestos throughout his employment with defendant, including up to the present time, are hereby deemed admitted by defendant.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant. Plaintiff has been employed by defendant from 1 November 1976, to the present at the Plymouth facility.
3. Defendant is a duly qualified self-insured employer.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant. Plaintiff was exposed to asbestos for 30 days within a seven month period as required by N.C. Gen. Stat. § 97-57.
5. Plaintiff's income for 52 weeks prior to his diagnosis of asbestosis in 1997 was $50,914.97. These wages are sufficient to justify the maximum compensation rate allowable pursuant to the North Carolina Workers' Compensation Act for the year 1997 which is $512.00. Plaintiff's income is also sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the year 2000, in which the Deputy Commissioner entered the first Order of Removal in this case, which is $588.00.
6. Plaintiff suffers from an occupational disease, asbestosis. Plaintiff was diagnosed with asbestosis on 9 December 1997, by Dennis Darcey, M.D. A member of the North Carolina Occupational Disease Panel confirmed this diagnosis and those medical records have been stipulated into evidence.
7. Plaintiff contends he is entitled to a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agreed that should the claim be found compensable that defendant would pay an amount of 5% of all compensation, exclusive of medical compensation as award of penalty pursuant thereto. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
8. Should this case be determined to be compensable, language may be included removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
9. Should N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7 be determined to be unconstitutional, additional testimony could be offered by the parties on the issues of wage loss, earning capacity and/or disability.
 ***********
Based upon all the competent evidence adduced at the hearing, the Full Commission finds as follows:
 FINDINGS OF FACT
1. The plaintiff has been employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from November 1, 1976 until present.
2. Plaintiff has presented convincing and undisputed evidence regarding substantial exposures to the hazards of asbestos in differing occupations throughout his employment with defendant.
3. Plaintiff initially worked in the plywood mill. Plaintiff was subsequently assigned to general maintenance as a maintenance worker where he worked throughout the plant including the boiler room. Plaintiff currently works as a pipe fitter and welder. Plaintiff has held this position for over ten (10) years. Throughout his employment, he was exposed to asbestos at various places throughout the plant.
4. Plaintiff was first exposed to asbestos dust in the plywood mill. Plaintiff's duties included blowing down the paper mills with compressed air.
5. The plaintiff was also exposed to asbestos dust working as a pipe fitter and welder. Plaintiff was exposed to asbestos dust from insulation on the boilers and pipes throughout the boiler room. Plaintiff would beat off asbestos insulation at various points in time by knocking it off with a hammer. Plaintiff also used a wire brush to grind and remove asbestos gaskets. During the time the plaintiff was performing this removal, the air around him would be thick with asbestos dust.
6. The plaintiff was not provided any respiratory equipment to protect against his exposure from asbestos dust. The air was dusty and his clothes at times would be covered with particles from the insulation.
7. The plaintiff was exposed to asbestos containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1976 until his case was heard on October 12, 1999.
8. The defendant admitted that the plaintiff does suffer from asbestosis, an occupational disease.
9. The following medical records confirming the diagnosis of asbestosis and asbestos related pleural disease as well as injurious exposures were introduced into evidence without objection: Drs. Dennis Darcey, Fred Dula, Phillip Lucas, Allen Hayes, James Johnson, Richard c. Bernstein an Douglas G. Kelling, Jr. The Full Commission finds the findings and opinions stated by these doctors to be credible and competent by the greater weight of the medical evidence.
10. The Commission gives great weight to the medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University dated December 9, 1997. Dr. Darcey took an occupational history from the plaintiff which included that he had worked in the fire department, lumber yard, digester area and paper machines, as a truck driver, pipe fitter and welder and believed he was exposed to asbestos dust during the 21 years of his employment. Plaintiff's exposure to asbestos dust occurred while doing construction and repair projects on valves and pipes where he had to remove asbestos insulation materials a few times per week. His history also included using a grinder to remove asbestos pipe gaskets, working on paper machine brakes and clutches and using an air hose to blow off the dust which contained asbestos.
It was the opinion of Dr. Darcey that plaintiff suffers from asbestosis and asbestos related pleural changes. His opinion was based on the history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read and high resolution CT scan of the chest showing changes consistent with asbestos exposure with interstitial and pleural changes, pulmonary function tests which showed slightly decreased diffusion. Dr. Darcey assigned a respiratory impairment rating of Class 2 to plaintiff under AMA guidelines.
Dr. Darcey, as part of his report, recommended that the plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. Dr. Darcey noted that further deterioration in lung function can occur even after exposure has ceased. He further recommended that the plaintiff should avoid further exposure to asbestos dust. Dr. Darcey also noted that plaintiff remains at an increased risk of developing lung cancer and mesothelioma, as opposed to those non-exposed individuals, and that medical monitoring is recommended.
11. The Full Commission gives great weight to the interpretations of a CT scan and chest x-ray dated July 25, 1997 by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was the opinion of Dr. Dula there were present areas of mild diffuse-type pleural thickening seen bilaterally and interstitial changes in both lungs including short, thickened interlobar lines extending to the pleural surfaces and small parenchymal bands on the CT scan. He further noted that interstitial changes were seen in the lower halves of both lungs consisting of irregular linear opacities and pleural thickening on both sides on the chest x-ray. It was his overall impression that both the CT scan and chest x-ray showed mild interstitial and pleural changes consistent with the early stages of asbestosis.
12. The Full Commission gives great weight to the following opinions of other doctors in this case:
 a. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated the same chest film, that there were present bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
 b. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the July 25, 1997 chest film and indicated thereon that there were parenchymal abnormalities consistent with pneumoconiosis present.
 c. Dr. James Johnson of Piedmont Radiology in Salisbury, and Dr. Caroline Chiles, a professor at Wake Forest Medical Center, both B-readers, reviewed the July 25, 1997 chest x-ray and both concluded there were both parenchymal changes present consistent with a pneumoconiosis.
 d. Dr. Richard C. Bernstein, also a B-reader, reviewed a recent chest x-ray dated August 28, 1999 and concluded there were both parenchymal changes present consistent with a pneumoconiosis.
13. On November 20, 1998, the plaintiff was examined by Dr. Douglas G. Kelling, Jr., a Member of the North Carolina Occupational Disease Panel. The Plaintiff-Employee advised Dr. Kelling that he had worked for Defendant-Employer for the last 22 years as a pipe fitter, mechanic, and a welder. Further, in the course of his jobs, he has been exposed to asbestos for the most part without the protection of a mask or respirator.
14. Dr. Kelling reviewed the chest x-ray and CT scan available at that time and noted that they both showed mild interstitial and pleural changes consistent with asbestosis. It was the opinion of Dr. Kelling that based upon the plaintiff's history of exposure to asbestos dust and the findings on his CT scan of the chest, that he has evidence of both asbestosis and asbestos related pleural disease. Dr. Kelling also classified the plaintiff with a Class 2 level of impairment according to AMA criteria due to the patient's corrected diffusion capacity of 69% of predicted.
15. Defendant admits that plaintiff is suffering from asbestosis, an occupational disease, and that he was diagnosed with asbestosis and asbestos related pleural plaques while still employed by the Defendant. This admission is supported by the above-referenced medical records and reports submitted into the record without objection.
16. Plaintiff's pulmonary impairment due to his asbestosis is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and his asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
17. Dr. Dennis Darcey has recommended respiratory protection for plaintiff.
18. The plaintiff's wages for 1997 were $50,914.97. His average weekly wage was $979.14 entitling him to the maximum worker's compensation rate for 1997 of $512.00 and the maximum rate of $588.00 for the year the Order of Removal was entered by the deputy commissioner in 2000, provided his wages did not decrease.
19. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-61.1et seq. was raised by the defendant and this issue was subsequently determined based upon the North Carolina Court of Appeals decision inJones v. Weyerhaeuser, 141 N.C. App. 482, 540 S.E.2d 824 (2000), review denied, 353 N.C. 525, 549 S.E.2d 858 (2001) finding the statutory provision constitutional.
20. Plaintiff is subject to an Order removing him from further exposure to the hazards of asbestos in any occupation within plaintiff's employment or in any other employment.
21. Plaintiff seeks attorney's fees from defendant in this case for unfounded litigiousness pursuant to N.C. Gen. Stat. § 97-88.1. Plaintiff's request should be reserved for subsequent determination at the final hearing in this case.
 ***********
Based upon the foregoing stipulations and findings of act, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while in the employment of the defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission must issue an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The record contains plaintiff's average weekly wages for 1997, the year of his diagnosis, but does not provide plaintiff's average weekly wage for 2000, the year the Deputy Commissioner issued the Order of Removal. However, plaintiff's wages in 1997 are such that the calculation of his compensation reaches the maximum allowed by statute for the year 2000, which was $588.00, provided his wages did not decrease. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00 per week. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7 are not unconstitutional. Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001); Clark v. ITT Grinnell Industrial Piping, Inc., 141 N.C. App. 417,539 S.E.2d 369 (2000).
7. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of plaintiff's asbestos related disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and to any additional benefits due to plaintiff which shall be determined after additional examinations.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant for unfounded litigiousness pursuant to N.C. Gen. Stat. § 97-88.1 is not yet ripe for determination. Therefore, this issue is hereby held in abeyance until the final award is issued in this claim.
11. Following the second and third examination and reports as required under N.C. Gen. Stat. § 97-61 et seq, further hearings may be required in this case. Plaintiff's eligibility for further disability compensation under the Act and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings, if the parties cannot agree.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestosis. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation at the rate of $588.00 per week for 104 weeks as a result of his asbestosis diagnosis, commencing on 11 January 2000, the date of the initial Order of Removal entered by Deputy Commissioner Jones. N.C. Gen. Stat. § 97-61.5(b). Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of $29.40 (constituting 5% of the weekly compensation due as per agreement of the parties) to plaintiff which shall also be paid in a lump sum for the 104 weeks past benefit due in paragraph 1 above. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5% entitling plaintiff to a total worker's compensation rate of $617.40. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearings following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
BSB:md