***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant was duly self insured.
4. Plaintiffs income during the fifty-two (52) weeks prior to his diagnosis on December 9, 1997, was $77,795.03, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
5. Plaintiff was last injuriously exposed to asbestos during his employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven month period as set forth in N.C. Gen. Stat. § 97-57.
6. Plaintiff does suffer from an occupational disease, asbestosis. This diagnosis has been confirmed by Dennis Darcey, M.D., on December 10, 1997. A member of the North Carolina Occupational Disease Panel has also confirmed this diagnosis. Plaintiff's medical records have been stipulated into evidence.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. Should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 9761.5(b), the deputy commissioner may include in the Opinion and Award language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62.5(b).
9. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The issues before the Industrial Commission are: (1) whether N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to this case; and (2) if so, what compensation, if any, is due the plaintiff?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from June 24, 1966, until September 4, 1967, and again from September 27, 1969, until the hearing before the Deputy Commissioner and continuing. Plaintiff served in the military from September 5, 1967 through September 26, 1969.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff held various jobs for defendant, first working as a chip car unloader and later as a general laborer in the wood chip area. In 1972, plaintiff started in the maintenance department as a class-A apprentice, where he had to clean up, change asbestos-containing break pads, and remove asbestos insulation and materials.
4. Plaintiff was subsequently moved to class-C, where he would occasionally wear asbestos gloves when he worked. His job duties involved putting asbestos-based blankets onto dryers. Plaintiff worked in the power and recovery area and would remove asbestos insulation from beams to enable scaffolding to be built atop the beams. Plaintiff was also exposed to asbestos when he worked on the extension ductwork, which involved wrapping asbestos insulation around the ducts.
5. During his employment, plaintiff was exposed to asbestos at various places throughout the plant. Defendant did not provide plaintiff with any type of respiration device to protect him from exposure to asbestos. On occasion, plaintiff only wore a respirator to protect himself from sulfur fumes.
6. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1967 to the present.
7. The parties submitted for consideration by the Full Commission the following medical records and reports of plaintiff by the following:
 a. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University, dated December 10, 1997. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff has a diagnosis of asbestos-related pleural changes and asbestosis.
 b. The medical report of Dr. Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders who saw plaintiff on September 12, 1997, for an evaluation. After a full physical evaluation and performance of pulmonary function tests, he reported mild pleural and interstitial changes, findings which would be consistent with mild asbestosis in the appropriate clinical situation.
 c. A CT scan and chest x-ray dated September 12, 1997, interpreted by Dr. James C. Johnson of Piedmont Radiology in Salisbury, a radiologist and B-reader. His report noted parenchymal abnormalities consistent with pneumoconiosis and bilateral opacities of a 1/0 profusion.
 d. Dr. Phillip Lucas, a NIOSH B-reader and radiologist, reviewed the chest x-ray dated September 12, 1997. Overall, it his opinion, and the Full Commission finds as fact, that there exist bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period.
 e. The September 27, 1997, x-ray was also reviewed by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. He reported, and the Full Commission finds as fact, that plaintiff had parenchymal abnormalities consistent with pneumoconiosis and bilateral opacities of a 1 /0 profusion.
 f. An advisory medical evaluation report written by Dr. Blake A. Spain, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on February 11, 1999. Dr. Spain concluded that plaintiff had significant asbestos exposure and possible early changes consistent with mild asbestosis. He recommended a clinical follow up to monitor possible progression of asbestosis.
8. Plaintiff does suffer from the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
9. Plaintiffs wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Jones ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed January 24, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. 111Grinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000): Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564,400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on January 24, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph I above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10%, late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, October 12, 1999, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs I and 2 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff s eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 14th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER