***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, and the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 24 June 1965 to 19 September 1966 and 2 October 1968 to present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period, as is required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s, and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam-producing boilers used at the facility. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff started working for defendant in 1966, but then served approximately two years in the military. Plaintiff returned to work for defendant in 1968 as a garage mechanic and welder with exposure to asbestos from repairing brake shoes and clutches on the paper machines. He routinely used an air hose to clean off the drums and clutch housing causing the asbestos dust to become airborne and inhaled. Additionally, he swept up the floors in these areas that caused the dust to become airborne. He did not wear any respiratory protection when doing mechanical repairs. He was also exposed to asbestos dust from insulation that was being removed from pipe covers and boilers in the areas of the plant where he worked.
7. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2001, which was $620.00.
8. Plaintiff contends that he is entitled to an award of 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant agreed that should the claim be found compensable, defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the undersigned determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. The parties submitted for consideration by the undersigned the medical records and reports of plaintiff by the following physicians:
 1. Dr. Dennis Darcey of the Division of Occupational 
Environmental Medicine of Duke University.
 2. Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader.
 3. Dr. Richard C. Bernstein of Pulmonary Critical Care Medicine, a NIOSH B-reader.
 4. Dr. D. Allen Hayes, a B-reader at Raleigh Internal Medicine Associates.
5. Dr. Clinton D. Young, a panel physician.
12. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted for review:
1. Dr. Fred Dula [March 6, 2000 and July 20, 2000]
 2. Dr. Richard Bernstein [January 18, 2000 and July 27, 2000]
 3. Dr. Allen Hayes [February 17, 2000 and November 27, 2000]
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was injuriously exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 24 June 1965 to 19 September 1966 and from 2 October 1968 until the present.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 24 June 1965 to 19 September 1966 and 2 October 1968 to present.
5. Plaintiff was examined by Dr. Dennis J. Darcey on 10 December 1997. At that time, plaintiff was complaining of shortness of breath in the summer when it was hot and humid. Dr. Darcey reviewed a chest x-ray dated 16 October 1997 by Dr. Fred Dula who found parenchymal abnormalities including irregular opacities in the lower lung zones bilaterally with a 0/1 profusion. In addition, Dr. Darcey noted that there was bilateral pleural thickening and plaque formation on the chest wall without calcifications. He also reviewed a high resolution chest CT dated 16 October 1997, interpreted by Dr. Dula in which plaintiff showed "mild diffuse type plural thickening bilaterally and mild interstitial changes consistent with very early mild asbestosis." Based upon his examination and other pertinent information provided to him, Dr. Darcey concluded that plaintiff "has a clinical diagnosis of asbestos related pleural changes and mild asbestosis." He recommended "periodic monitoring for progression of asbestos related disease . . . including pulmonary function and chest x-ray."
6. In addition to the 1997 x-ray and CT scan, Dr. Dula reviewed a chest x-ray and a high resolution CT scan taken of plaintiff on 8 December 1999 and compared them to the earlier films. Upon review of the 1999 x-ray, Dr. Dula noted pleural thickening along both chest walls and "some linear atelectasis in the left base vs scarring." On the 1999 CT scan, he found "focal interstitial changes in both lung bases, including short, thickened interlobular septal lines extending to the pleural surfaces." He also found "quite a bit of thickening of the major fissure on the right, which [was] new since the prior study." Dr. Dula concluded that the changes seen were consistent with asbestosis.
7. Dr. Richard C. Bernstein examined the 1997 films of plaintiff on 16 October 1999 and found "increased interstitial markings throughout the bases of both lung fields." On 8 December 1999, he examined the new chest films and found increased interstitial markings which "with the proper exposure history and latency [are] consistent with asbestosis."
8. Dr. Allen Hayes examined the 16 October 1997 chest x-ray of plaintiff and found "modest pleural changes but no significant parenchymal disease." Dr. Hayes' opinion on whether plaintiff has asbestosis is given less weight than the opinions of Drs. Darcey, Young, Dula and Bernstein.
9. Dr. Clinton Young examined plaintiff on 4 February 1999, and reviewed the 1997 chest x-ray and CT scan. He found "bilateral pleural thickening in the lateral lung zones with increased density at the left costophrenic angle and an area of horizontal atelectasis or calcification on an area of pleural plaque." Dr. Young noted that on the CT scan there was evident "mild diffuse pleural thickening bilaterally . . . with mild interstitial changes in a few locations including short thickened interlobar lines extending to the pleural surfaces. Dr. Young concluded that plaintiff has mild pulmonary asbestosis.
10. Based upon the greater weight of the evidence, plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of injurious exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
11. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment.
12. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $620.00 during the year 2001, in which Deputy Commissioner Garner ordered plaintiff's removal from asbestos exposing employment.
13. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
14. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant for as much as 30 working days or parts thereof, within seven consecutive months during the period from 2 October 1968 to the present, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITT Grinnell IndustrialPiping, Inc., 141 N.C. App. 417, 539 S.E.2d 369 (2000); Haynes v.Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v.Babcock Wilcox Construction Company, 101 N.C. App. 564,400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the Commission has found and concluded that plaintiff contracted asbestosis and asbestos-related pleural disease as a result of his employment with defendant; and, the parties have stipulated that plaintiff has been exposed to asbestos; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2001, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $620.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. § 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy may be determined by the Deputy Commissioner at a subsequent hearing.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease as a result of his employment with defendant, at a weekly rate of $620.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy may be addressed at a hearing before a deputy commissioner.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER